**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TALIDA IOANA POPA,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

*Respondent.*

No. 05-76507

Agency No.
A079-804-545

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 9, 2009—San Francisco, California

Filed July 6, 2009

Before: Mary M. Schroeder, A. Wallace Tashima, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

8227

## COUNSEL

Jagdip Singh Sekhon, Sekhon & Sekhon, San Francisco, California, for the petitioner.

Peter D. Keisler, Assistant Attorney General; Barry J. Pettinato; David C. Kully; Washington, District of Columbia, for the respondent.

---

**OPINION**

BEA, Circuit Judge:

The sole issue in this appeal is whether the government is permitted to provide notice of removal proceedings to an alien using a two-step process: (1) sending a Notice to Appear in which the government states that the date and time of the hearing will be provided at a later time and (2) later sending notice of the hearing with the date and time of the hearing.

Talida Popa, a native and citizen of Romania, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") order denying her motion to reopen removal proceedings following a removal hearing *in absentia*. Popa contends she did not receive proper notice of the time and place of the hearing because her Notice to Appear bore no time and place for the hearing; it stated Popa would be notified of the time and place in a separate and later writing. That later writing, which did contain the date, time, and place of the hearing, was sent to a post office box she no longer checked. We hold the government is permitted to use the two-step process. We deny Popa's petition.

## I.  Factual and Procedural Background

On July 29, 2002, Popa was lawfully admitted to the United States as an exchange visitor[1] authorized to remain in the U.S.

---

[1]Popa entered the U.S. on a J-1 Exchange Visitor Visa. A J-1 Visa is provided to individuals "for educational and cultural exchange programs

until October 19, 2002. After entering the United States, Popa married Jason A. San Souci, a U.S. citizen.[2] On April 1, 2003, San Souci filed a Form I-130—a "Petition for Alien Relative" —with the Bureau of U.S. Citizenship and Immigration Services ("USCIS") on behalf of Popa; that same day, Popa applied to USCIS to become a permanent resident based on the Form I-130. Popa and San Souci lived in Nevada and used a mail address: P.O. Box 971, Crystal Bay, Nevada.

In January 2004, San Souci informed Popa he had to travel to New Jersey to attend a child custody hearing regarding his son from a previous marriage. On January 26, 2004, without informing Popa, San Souci withdrew the Form I-130 petition; accordingly, on February 5, 2004, USCIS denied Popa's application for status as a permanent resident and sent notice of the denied application to Popa's Nevada P.O. box address. The same day, the government issued Popa a Notice to Appear ("NTA") charging her with removability for being present in the U.S. without a valid, unexpired visa to remain in the U.S. and for failing to maintain her exchange visitor status, pursuant to 8 U.S.C. §§ 1227(a)(1)(B) and 1227(a)(1)(C)(i). On February 9, 2004, Popa received the notice denying her application for status as a permanent resident and the NTA at her P.O. box address.

The NTA ordered Popa to appear before an immigration judge at a "[t]ime and date to be set by the U.S. Immigration Court," and provided Popa with the Immigration Court's address. Additionally, the NTA stated:

---

designated by the Department of State, Bureau of Consular Affairs . . . . The "J" exchange visitor program is designed to promote the interchange of persons, knowledge, and skills in the fields of education, arts, and sciences." *See* http://www.uscis.gov/portal/site/uscis/menuitem.5af9bb959 19f35e66f614176543f6d1a/?vgnextoid=a4ac6138f898d010VgnVCM 10000048f3d6a1RCRD&vgnextchannel=48819c7755cb9010VgnVCM 10000045f3d6a1RCRD.

[2]It is unclear from the record the date they married.

> You are required to provide the [Immigration and Naturalization Service ("INS")], in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

After Popa received the NTA, she contacted San Souci, who was still in New Jersey, and San Souci confirmed he withdrew the Form I-130 petition and was considering reconciling with his ex-wife.[3] Popa moved in with her childhood friend, Voica Matis, who lived in Riverbank, California.[4] Popa did not inform the Immigration Court of her address change.

On February 26, 2004, the Immigration Court mailed a hearing notice and a Form EOIR-33 to Popa at the same Nevada P.O. box address to which the government mailed and at which Popa received the NTA. The hearing notice stated that Popa's hearing was scheduled to take place at 9:30 a.m. on March 16, 2004, at USINS, 1351 Corporate, Reno, NV, 89502. However, Popa did not receive this hearing notice because she had moved from Nevada to California and had

---

[3]It is not clear from the record exactly when Popa contacted San Souci.

[4]It is not clear from the record exactly when Popa moved in with Matis.

not checked the mail at her Nevada P.O. box, nor had she terminated her use of the Nevada P.O. box and arranged for her mail to be forwarded. *See* 39 C.F.R. § 111.4 (2008); http://pe.usps.gov/text/dmm300/507.htm.

On March 16, 2004, Popa failed to appear at her hearing before the Immigration Court. The IJ issued a decision ordering Popa removed *in absentia*.

In June 2004, Popa first met with an attorney to determine her immigration status. At this meeting, Popa learned of the March 16, 2004 hearing and the IJ's decision ordering her removed to Romania. On September 13, 2004, Popa timely filed a motion to reopen her removal proceeding and to rescind her *in absentia* removal order with the Immigration Court, contending she never received notice of her hearing. The IJ denied the motion.

Popa timely appealed to the BIA, which adopted and affirmed the IJ's decision, and dismissed Popa's appeal.[5] Popa timely petitioned this court for review of the BIA's decision.

## II.   Standard of Review

When the BIA adopts the IJ's decision in its entirety citing *Matter of Burbano*, 21 I. & N. Dec. 872 (BIA 1994), as here, this court reviews the IJ's decision. *Abebe v. Gonzales*, 432 F.3d 1037, 1039 (9th Cir. 2005) (en banc). This court reviews claims of error in an IJ's denial of a motion to reopen for abuse of discretion. *Chete Juarez v. Ashcroft*, 376 F.3d 944, 947 (9th Cir. 2004). An IJ "abuses his discretion when he acts arbitrarily, irrationally, or contrary to law." *Id.* (internal cita-

_____

[5]Before the BIA, in addition to contending she never received notice of her hearing, Popa also contended "exceptional circumstances" warranted a reopening of the *in absentia* removal proceeding. The BIA rejected this argument. Popa does not raise this issue in her petition for review before this court.

tion and quotation marks omitted). Further, this court reviews de novo claims of error in "determination[s] of purely legal questions regarding the requirements of the Immigration and Nationality Act." *Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir. 2000).

### III. Discussion

Pursuant to 8 U.S.C. § 1229(a), an alien in removal proceedings must receive written notice—a Notice to Appear—specifying, in relevant part: (1) the "requirement that the alien must provide the Attorney General immediately with a written record of any change of the alien's address or telephone number" and the consequences of the failure to do so; and (2) the "time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(F)(ii)-(iii), (G)(i). If there is a change in the time and place of such proceedings, the government must provide written notice to the alien of the change and the consequences of the failure to attend such proceedings. *Id.* § 1229(a)(2)(A). Written notice "shall be given in person to the alien," or, "if personal service is not practicable,[6] through service by mail to the alien." *Id.* § 1229(a)(1).

Pursuant to 8 U.S.C. § 1229a(b)(5)(A), an "alien who, after written notice . . . has been provided to the alien or the alien's counsel of record, does not attend a proceeding . . . shall be ordered removed in absentia if the [government] establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable."[7] Written notice is sufficient if "provided at the most recent

---

[6]In-person service "to an alien is not practicable if the alien is not in the immigration court before the IJ." *Tedeeva v. INS*, 88 F.3d 826, 827 (9th Cir. 1996).

[7]Popa concedes that a Notice to Appear was sent to her on February 9, 2004, which notice she received. Popa also concedes that a notice of hearing was sent to her on February 26, 2004, which notice she did not receive because she had moved and had not checked her old post office box to which the notice was sent.

address provided [by the alien]." *Id.* An order of removal entered *in absentia* may be rescinded "upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice" of the removal proceeding. *Id.* § 1229a(b)(5)(C)(ii); 8 C.F.R. § 1003.23(iii)(A)(2).

## A.   The Notice to Appear was not statutorily defective.

Popa contends the IJ erred by ordering her removed *in absentia* because she did not receive adequate notice of her removal proceeding. Popa contends the NTA, received on February 9, 2004, was statutorily defective because it failed to state the time and date of her hearing, and instead stated the hearing would take place at a time and date "to be set by the U.S. Immigration Court," in violation of 8 U.S.C. § 1229(a)(1)(G)(i). Additionally, Popa contends the NTA was defective because it failed to notify Popa she was required to notify the Immigration Court of a change in address, in violation of 8 U.S.C. § 1229(a)(1)(F)(ii).

### 1.   The   Notice   to   Appear   did   not   violate § 1229(a)(1)(G)(I).

[1] Although § 1229(a)(1)(G)(i) requires a notice to appear to "specify[ ]" the time and place at which the proceedings will be held, this court has never held that the NTA cannot state that the time and place of the proceedings will be set at a future time by the Immigration Court. This court silently has adopted the rule that the time and date of a removal proceeding can be sent after the first notice to appear.

In *Dobrota v. INS*, 311 F.3d 1206, 1208 (9th Cir. 2002), Dobrota, a Romanian citizen, entered the U.S. as a nonimmigrant visitor with authorization to remain in the U.S. for six months. Rather than depart at the end of that time period, Dobrota remained in the U.S. *Id.* On July 28, 1995, the INS sent an "Order to Show Cause and Notice of Hearing"[8]

---

[8]Prior to 1996, deportation procedures were governed by 8 U.S.C. § 1252b. Under § 1252b, written notice of deportation hearings was

("OSC") to Dobrota's address of record and to Dobrota's counsel. *Id.* The OSC stated "a hearing date and location would be determined and notice of these details would be mailed to the address provided by the respondent." *Id.* (internal quotations marks omitted). On October 7, 1995, the Office of the Immigration Judge sent a Notice of Hearing that included the time, date, and location of Dobrota's deportation hearing to Dobrota's address of record; however, Dobrota no longer resided there and did not receive the notice. *Id.* at 1209. This court addressed the issue whether the second notice should have been sent to Dobrota's attorney because the first notice was sent to his attorney, and held the second notice should have been sent to Dobrota's attorney. Although this court did not consider whether the original notice was statutorily defective, this court did not take issue with the two-step process.[9]

[2] Some of our sister circuits have taken up the issue of whether a two-step notice procedure is permissible. The Fifth, Seventh, and Eighth Circuits have held that a Notice to Appear that does not include the date and time of an alien's deportation hearing, but that states that a date and time will be set later, is not defective so long as a notice of the hearing

---

referred to as an "order to show cause." 8 U.S.C. § 1252b. As with the notice to appear, the order to show cause was required to specify the time and place of proceedings. In 1996, § 1252b was repealed and replaced by 8 U.S.C. § 1229, the statute at issue here, that governs removal proceedings.

[9]Similarly, this court did not question the use of the two-step hearing notice process in *Tedeeva v. I.N.S.*, 88 F.3d 826 (9th Cir. 1996). In Tedeeva, the Office of the Immigration Judge sent Tedeeva an order to show cause, initiating deportation proceedings against her. The order stated that Tedeeva would be notified of the time and place of her deportation proceeding at a later time. Three months later, the Office of the Immigration Judge sent Tedeeva a notice advising her of the date and place of her hearing. Although the court addressed only the issue of whether she received constructive notice of her hearing, the court, like in *Dobrota*, did not take issue with the two-step notice process.

is in fact later sent to the alien. *See Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009) (holding a Notice to Appear "need not include the specific time and date of a removal hearing in order for the statutory notice requirements to be satisfied; that information may be provided in a subsequent [notice of hearing]"); *Dababneh v. Gonzales*, 471 F.3d 806, 809-10 (7th Cir. 2006) (holding that the requirement that a Notice to Appear state a time and place of the removal hearing may be met with two documents); *Haider v. Gonzales*, 438 F.3d 902, 907 (8th Cir. 2006) ("The INA simply requires that an alien be provided written notice of his hearing; it does not require that the NTA . . . satisfy all of § 1229(a)(1)'s notice requirements. Our reading of the INA and the regulations compels the conclusion that the NTA and the [notice of hearing] . . . combined to provided the requisite notice."). We agree.

**[3]** Further, the Immigration Court's Rules of Procedures, 8 C.F.R. § 1003.18, state that the government is required to

> provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable. If that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing.

As noted by the Seventh Circuit, the Department of Homeland Security ("DHS") "frequently serves NTAs where there is no immediate access to docketing information. In those circumstances, DHS may indicate in the NTA that it will give the alien subsequent notice of the precise time and place of the hearing once it files the NTA with the appropriate immigration court." *Dababneh*, 471 F.3d at 809. Because circumstances may arise in which it is not feasible for an immigration court to state the date, time, and place of a removal hearing at the time the NTA is sent, an immigration

court must be permitted flexibility in sending the alien the date, time, and place of his removal hearing. Thus, we hold a Notice to Appear that fails to include the date and time of an alien's deportation hearing, but that states that a date and time will be set later, is not defective so long as a notice of the hearing is in fact later sent to the alien.

**[4]** Here, the NTA ordered Popa to appear before an immigration judge at a "[t]ime and date to be set by the U.S. Immigration Court." On February 26, 2004, the Immigration Court sent Popa a hearing notice stating that Popa's hearing was scheduled to take place at 9:30 a.m. on March 16, 2004, at USINS, 1351 Corporate, Reno, NV, 89502. Therefore, the NTA and the hearing notice combined provided Popa with the time and place of her hearing, as required by 8 U.S.C. § 1229(a)(1)(G)(i).

## 2. The Notice to Appear did not violate § 1229(a)(1)(F)(ii).

Popa contends that the section of the NTA that explained Popa's duty to inform the Immigration Court of any change in address was "confusing." Popa contends, when read together,

> the statements that 'you must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding' and 'you will be provided with a copy of the [EOIR-33] form' . . . indicate to the recipient that the non-citizen will receive a Form EOIR-33 at a future hearing where she will have an opportunity to change her address, and until that occurs she is without the instrument that must be used to do so.

Popa contends the NTA was statutorily defective because it failed to state the requirement that Popa was required to notify

immediately the Attorney General of any change in her address in violation of 8 U.S.C. § 1229(a)(1)(F)(ii). Popa's contention is without merit.

[5] The NTA does *not* state that Popa would receive Form EOIR-33 at a future hearing. The method and the location where a EOIR-33 is to be provided are not limited to personal service at a hearing. Nor did the NTA state that her *only* opportunity to report any change in address was through a Form EOIR-33. Although the NTA stated that Popa must notify the Immigration Court immediately of any change in address by using a Form EOIR-33, which would be provided to Popa, it also stated, "If you do not submit Form EOIR-33 and *do not otherwise provide an address at which you may be reached* during proceedings, then the Government shall *not* be required to provide you with written notice of your hearing." (emphasis added). Thus, the statements, read together, make clear that Popa was not limited to using a Form EOIR-33 to update her current address, and that her failure to update her address by another method relieves the government of its responsibility to provide Popa with written notice of her hearing.[10] To hold otherwise would allow an alien who has not appeared at a hearing where she could be given a Form EOIR-

---

[10]Of course, one *could* read the quoted phrase from the NTA to require the alien to use the EOIR-33 *and* "otherwise provide an address at which you might be reached." That is, a correctly filled-out EOIR-33 is not enough; the alien must also "otherwise provide" her address. If the address were "otherwise provide[d]," failure to use the EOIR-33 would also result in failure correctly to notify the government of a change of address. But apart from it being absurd to require two notifications of a change of address, such a reading would be inconsistent with the provisions of the NTA form, which specifically direct the use of Form EOIR-33 alone. *See* NTA ("You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding," and "You will be provided with a copy of this form."). The only reasonable interpretation of this language is that, like all governmental agencies, the INS liked its forms to be used, but that any other means of address change notification was also permissible.

33, to change addresses, not notify the immigration authorities of her new address, and avoid ever receiving a Form EOIR-33. She could thus avoid removal proceedings, unless apprehended and detained. Such a holding would be an unreasonable interpretation of the statute. Further, it should also be noted that, in a different section, the NTA provided the address of the local Office of the Immigration Judge; thus, Popa could have contacted that office to report her change in address.

**[6]** Because the NTA advised Popa of her responsibility to update the Immigration Court of any change in address, the NTA met the requirements of 8 U.S.C. § 1229(a)(1)(F)(ii).

### B.  The IJ's order removing Popa *in absentia* did not violate Popa's right to due process.

Finally, Popa contends the *in absentia* removal proceedings violated her due process rights because she was not afforded adequate notice of the proceedings.

**[7]** The Due Process Clause of the Fifth Amendment of the United States Constitution "protects aliens in deportation proceedings and includes the right to a full and fair hearing as well as notice of that hearing." *Farhoud v. INS*, 122 F.3d 794, 798 (9th Cir. 1997). The "Supreme Court has made it clear that notice must be such as is reasonably calculated to reach interested parties." *Id.* (internal citation and quotation marks omitted). An alien "does not have to actually receive notice of a deportation hearing in order for the requirements of due process to be satisfied." *Id.* Due process "is satisfied if service is conducted in a manner 'reasonably calculated' to ensure that notice reaches the alien." *Id.* The government satisfies notice requirements "by mailing notice of the hearing to an alien at the address last provided to the INS." *Dobrota*, 311 F.3d at 1211. If an alien fails to appear at the removal hearing, an IJ may enter an order of removal *in absentia* so long as

these notice requirements are met. *See Khan v. Ashcroft*, 374 F.3d 825, 828 (9th Cir. 2004).

**[8]** The government mailed the NTA to Popa's last provided address—the P.O. box in Nevada. Popa then moved to California. Because Popa failed to update her address, the government mailed a notice of hearing to her Nevada address. As Popa concedes, the government mailed the notice of hearing to the address Popa most recently provided to the government.[11] Although Popa contends her due process rights were violated because the NTA did not inform her of her duty to keep the government informed of any changes to her address, as discussed above, her contention is without merit. The NTA did notify Popa of her duty to update her address after any changes, as well as the consequences of a failure to do so. Thus, Popa's right to due process was not violated because the Immigration Court mailed notice of her hearing to Popa's last provided address.

## IV.   Conclusion

We deny Popa's petition for review of the BIA's decision affirming the IJ's order denying her motion to reopen removal proceedings.

**PETITION DENIED.**

---

[11]Popa did not have a forwarding address in her Nevada P.O. box.