Honorable Rosemary Márquez, United States District Judge
On March 7, 2018, Defendant Eder Said Erazo-Diaz was indicted for illegal reentry of a removed alien in violation of 8 U.S.C. § 1326(a). (Doc. 7.) On September 14, Defendant filed a Motion to Dismiss Indictment Pursuant to 8 U.S.C. § 1326(d), arguing that the prior order of removal is void and thus cannot serve as a predicate for the illegal reentry charge. (Doc. 33.) On November 2, 2018, Magistrate Judge Leslie A. Bowman issued a Report and Recommendation, recommending that the Motion to Dismiss be granted. (Doc. 48.) The Government filed Objections, to which Defendant has responded. (Docs. 52, 53.)
I. Background
Defendant is a Honduran national who first entered the United States in 2007. On August 1, 2008, he was served with a Notice to Appear, alleging that he was removable under the Immigration and Nationality Act. The Notice to Appear directed Defendant to appear before an immigration judge "on a date to be set at a time to be set to show why [he] should not be removed from the United States...." On August 18, 2008, Defendant was served with a Notice of Hearing, scheduling his master hearing before the immigration court on October 20, 2008, at 1:00 p.m. Defendant was subsequently served with ten more Notices of Hearing, each continuing the master hearing to a later date. Finally, on December 8, 2010, the immigration judge ordered that Defendant be deported to Honduras. Defendant was deported on December 17, 2010.
Defendant reentered the United States. Immigration officials determined that Defendant was removable through reinstatement of the December 2010 order of removal. Defendant was deported on September 13, 2017.
Defendant was apprehended on February 10, 2018, after reentering the United States. He is now charged with illegal reentry "after having been ... removed ... on or about September 13, 2017[.]" He argues that his charge must be dismissed because the immigration judge lacked jurisdiction to enter the December 2010 order of removal, a fact which would preclude the Government from relying on that order or its reinstatement.
*870 II. Discussion[1]
Defendant challenges the underlying removal order upon which the § 1326(a) charge is predicated. Defendant contends that the order of removal that was reinstated and used to deport him was void. Based on her interpretation of a recent United States Supreme Court case, Pereira v. Sessions , --- U.S. ----, 138 S.Ct. 2105, 201 L.Ed.2d 433 (2018), Judge Bowman agreed.
Defendant's collateral challenge is governed by § 1326(d), which requires him to demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the removal proceedings improperly deprived him of the opportunity for judicial review; and (3) the predicate removal order was fundamentally unfair. A removal order is fundamentally unfair if "(1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." United States v. Guizar-Rodriguez , 900 F.3d 1044, 1047 (9th Cir. 2018) (quoting United States v. Ubaldo-Figueroa , 364 F.3d 1042, 1048 (9th Cir. 2004) ).
A. Pereira v. Sessions & Notices to Appear
Title 8 U.S.C. § 1229a(a)(1) authorizes immigration judges to "conduct proceedings for deciding the inadmissibility or deportability of an alien." Removal proceedings are initiated by the filing of a "notice to appear" with the immigration court. 8 C.F.R. § 1239.1(a). Jurisdiction does not vest in the immigration court until the "notice to appear" is filed. Id. §§ 1003.13, 1003.14(a); see Gonzalez-Caraveo v. Sessions , 882 F.3d 885, 890 (9th Cir. 2018) ("Once a notice to appear is filed with the Immigration Court, however, jurisdiction over the individual's immigration case vests with the [immigration judge] ...."). Pursuant to 8 U.S.C. § 1229(a)(1), a "notice to appear" must contain (among other things) "[t]he time and place at which the [removal] proceedings will be held."
The United States Supreme Court examined the interaction between a "notice to appear" (defined in § 1229(a)(1) ) and the "stop-time rule" (codified at § 1229b(d)(1) ), the latter of which relates to a form of discretionary relief available to aliens who "have accrued 10 years of continuous physical presence in the United States." Pereira , 138 S.Ct. at 2109-10. Under the stop-time rule, an alien's period of continuous physical presence is halted once a "notice to appear" is served. Id. at 2109. Relying on the "plain text, the statutory context, and common sense," the Supreme Court concluded that a putative "notice to appear" that omits the time and place of the removal proceedings "is not a 'notice to appear under section 1229(a) ' and therefore does not trigger the stop-time rule." Id. at 2110.
The Supreme Court explained that, by expressly referencing § 1229(a), the stop-time rule
specifies where to look to find out what "notice to appear" means. Section 1229(a), in turn, clarifies that the type of notice "referred to as a 'notice to appear' " throughout the statutory section is a "written notice ... specifying," as relevant here, "[t]he time and place at which the [removal] proceedings will be held." § 1229(a)(1)(G)(i). Thus, based on the plain text of the statute, it is clear that to trigger the stop-time rule, the Government must serve a notice to appear that, at the very least, "specif[ies]"
*871 the "time and place" of the removal proceedings.
Id. at 2114.
Federal district courts disagree on the reach of the Supreme Court's holding in Pereira . Some district courts have found that Pereira extends no further than the stop-time rule, and thus it does not serve as a basis for a § 1326(d) collateral attack. See, e.g. , United States v. Chavez , No. 2:17-CR-40106-01-HLT, 2018 WL 6079513 (D. Kan. Nov. 21, 2018).[2] Other district courts have found that Pereira clarifies what a notice must contain to be a "notice to appear" under § 1229(a), and that because a putative notice that omits the time and place of the removal proceedings is not a "notice to appear," the filing of a such a notice does not confer jurisdiction on an immigration court. See, e.g. , United States v. Cruz-Jimenez , No. A-17-CR-00063-SS, 2018 WL 5779491 (W.D. Tex. Nov. 2, 2018), appeal docketed , No. 18-50943 (5th Cir. Nov. 8, 2018). District courts that have concluded that Pereira extends to other contexts are themselves divided, however. Some have found that, because the immigration court lacked jurisdiction and could not issue a valid order of removal, a defendant need not show under § 1326(d) that he exhausted administrative remedies or that he was denied the opportunity for judicial review; in those cases, the defendant's collateral attack succeeds. See, e.g. , United States v. Ortiz , 347 F.Supp.3d 402, 2018 WL 6012390 (D.N.D. Nov. 7, 2018). Others have found that, even though a notice is defective under Pereira , the defendant can waive that defect and must still show that he exhausted administrative remedies and was denied judicial review; a defendant's collateral attack can thus fail despite the defect. See, e.g. , United States v. Lira-Ramirez , No. 18-10102-JWB, 2018 WL 5013523 (D. Kan. Oct. 15, 2018).
B. Immigration Court's Jurisdiction
Defendant emphasizes that the August 2008 Notice to Appear did not provide the date and time of his master hearing and contends, therefore, that it is not a "notice to appear" under § 1229(a). Since jurisdiction does not vest with the immigration court until a "notice to appear" is filed, he argues, the immigration court was without jurisdiction to order him removed from the United States.
The Government contends that Congress did not address by statute whether or when jurisdiction vests in the immigration court, and thus that issue is governed by the regulations implemented by the Attorney General. It argues that since the regulatory definition of a "notice to appear" does not require time-and-place information, 8 C.F.R. § 1003.15(b), the August 2008 Notice to Appear was valid and sufficient to confer jurisdiction on the immigration court.
Judge Bowman agreed with Defendant, finding that only a valid "notice to appear" can confer jurisdiction on the immigration court, and that a notice is invalid if it omits the date-and-time information. Judge Bowman further found that a lack of jurisdiction cannot be waived, and that an invalid notice cannot be cured by subsequent service of a "notice of hearing." Therefore, since the immigration court lacked jurisdiction, Judge Bowman recommends finding that Defendant's removal proceedings were fundamentally unfair and ordering that the indictment be dismissed.
*872 In its Objections, the Government urges this Court to follow the other cases in this district that have rejected arguments identical to Defendant's. The Government argues that Pereira expressly limited its holding to cases involving the stop-time rule, which is not at issue in this case. The Government asserts that, if Pereira did have such far-reaching consequences, the Supreme Court would not have remanded for further proceedings because there would be no jurisdiction for such proceedings. The Government also argues the Court should adhere to pre- Pereira case law upholding the two-step practice of serving a notice without time-and-place information and then a subsequent notice of hearing containing that information, and to post- Pereira administrative decisions that reject a broad reading of Pereira .
The Court agrees with Defendant. Although the Supreme Court narrowly defined the issue in Pereira , it held clearly and repeatedly that a notice that omits the time and place of the removal proceedings "is not a 'notice to appear under section 1229(a).' " 138 S.Ct. at 2110, 2113-14, 2115, 2118. Significantly, the Supreme Court explained that the time-and-place requirement is "definitional," and that, "when the term 'notice to appear' is used elsewhere in the statutory section, including as the trigger for the stop-time rule, it carries with it the substantive time-and-place criteria required by § 1229(a)." Id. at 2116. The foregoing language indicates that the stop-time rule is only one context in which the "notice to appear" definition applies.
The Court disagrees with the Government that deference should be given to the regulatory definition of a "notice to appear," or to any administrative decisions that adopt a narrow reading of Pereira . "Congress has supplied a clear and unambiguous answer to the interpretive question at hand"-i.e., a notice that does not specify the time and place of the removal proceedings is not a "notice to appear" under § 1229(a) -and an inconsistent agency regulation cannot displace Congress' intent. Id. at 2113-14 ; United States v. Haggar Apparel Co. , 526 U.S. 380, 392, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999) ("In the process of considering a regulation in relation to specific factual situations, a court may conclude the regulation is inconsistent with the statutory language or is an unreasonable implementation of it. In those instances, the regulation will not control.").
The Government's citation to United States v. Ortega , No. 17-10295, 751 Fed.Appx. 985, 2018 WL 4628632 (9th Cir. 2018) (mem.) does not persuade the Court otherwise. The Ortega court made no mention of Pereira , and the Court declines to read into that silence a broad implication that the Ninth Circuit has rejected the argument raised here by Defendant. See id. The Court further disagrees that pre- Pereira case law upholding two-step notice remains valid following Pereira . See Popa v. Holder , 571 F.3d 890 (9th Cir. 2009). The Popa court explained:
Although § 1229(a)(1)(G)(i) requires a notice to appear to "specify [ ]" the time and place at which the proceedings will be held, this court has never held that the [notice to appear] cannot state that the time and place of the proceedings will be set at a future time by the Immigration Court. This court silently has adopted the rule that the time and date of a removal proceeding can be sent after the first notice to appear.
Id. at 895. Implicit in Popa is the idea that a notice that omits the time-and-place information is still a "notice to appear." Pereira expressly rejects that notion. 138 S.Ct. at 2110. The Popa court also relied on the practical difficulties associated with providing time-and-place information in an initial notice. 571 F.3d at 896. The Supreme *873 Court examined these practical concerns as well and determined that such concerns "are meritless and do not justify departing from the statute's clear text." Pereira , 138 S.Ct. at 2118. Given the foregoing, the two-step notice given in Defendant's case did not cure the jurisdictional defect.
The Court finds that a "notice to appear" under § 1229(a)(1) was not filed in Defendant's case, and thus jurisdiction did not vest in the immigration court pursuant to 8 C.F.R. §§ 1003.13, 1003.14. Accordingly, Defendant's appearance at the removal hearing could not cure the deficient notice, and the immigration court proceedings are void. See Da Cruz v. Immigration & Naturalization Serv. , 4 F.3d 721, 722-23 (9th Cir. 1993) (finding Board of Immigration Appeals lacked jurisdiction to order deportation of petitioner where agency violated regulation requiring appeals to be filed within 13 days); Stop H-3 Ass'n v. Coleman , 533 F.2d 434, 441 n.13 (9th Cir. 1976) ("Jurisdiction means the right to say and the power to act; and, as between agencies of the government, jurisdiction is the power of that particular agency to administer and enforce the law." (citation and internal quotation marks omitted) ); Wilson v. Carr , 41 F.2d 704, 706 (9th Cir. 1930) ("[I]f the order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it.").
C. Defendant's Collateral Attack
Defendant contends that he has satisfied the fundamental-unfairness prong of § 1326(d) because the illegal order of removal was entered in violation of his due process rights, and he was removed when he should not have been. He argues further that, for two reasons, he is not required to show he exhausted administrative remedies or was denied judicial review: first, prior to Pereira , it would have been futile to argue that a notice that omits the time-and-place information invalidates the removal proceedings because both Board of Immigration Appeals and Ninth Circuit precedent foreclosed such an argument; and, second, exhaustion and judicial review are unnecessary because, without jurisdiction, the removal proceedings are a legal nullity.
The Court agrees that the order of removal is fundamentally unfair under § 1326(d)(3). Because it was entered without jurisdiction, it was a violation of Defendant's due process rights, and, as it unlawfully resulted in Defendant's removal, it prejudiced Defendant. See United States v. Aguilera-Rios , 769 F.3d 626, 630 (9th Cir. 2014) (order of removal is fundamentally unfair if, pursuant to order, defendant "was removed when he should not have been" (citation omitted) ).
Furthermore, since the order of removal is void for lack of jurisdiction, Defendant was not required to exhaust his administrative remedies or seek judicial review. See Lazaro v. Mukasey , 527 F.3d 977, 980 (9th Cir. 2008) ("A petitioner is entitled to relief from a defective [notice to appear] if he shows that the Immigration Court lacked jurisdiction." (citation and internal quotation marks and brackets omitted) ); United Farm Workers of Am., AFL-CIO v. Ariz. Agric. Emp't Relations Bd. , 669 F.2d 1249, 1253 (9th Cir. 1982) ("Exhaustion of administrative remedies is not required where ... the administrative proceedings themselves are void."); Reese Sales Co. v. Hardin , 458 F.2d 183, 187 (9th Cir. 1972) (explaining exhaustion of administrative remedies is not required where "the agency lacks power or jurisdiction to proceed"); Ortiz , 347 F.Supp.3d at 407, 2018 WL 6012390, at *3 (explaining defendant need not satisfy the judicial review requirement where the immigration court lacked jurisdiction because the requirement "surely ... requires an Immigration Judge's decision *874 be anchored in an exercise of proper jurisdiction."). Defendant thus need not satisfy the strict requirements of § 1326(d)(1)-(2).
III. Conclusion
Defendant has shown that he is entitled to relief. The December 2010 order of removal is void because the immigration court lacked jurisdiction to enter it. Therefore, the Government is unable to establish an element of the offense of illegal reentry. United States v. Vasquez-Gonzalez , 901 F.3d 1060, 1064 (9th Cir. 2018) ("A valid removal order is a predicate element of a conviction for illegal reentry under § 1326." (emphasis added) ). Furthermore, the immigration court's lack of jurisdiction makes the order of removal fundamentally unfair, and Defendant need not show that he exhausted administrative remedies or was denied the opportunity for judicial review.
IT IS ORDERED:
1. The Government's Objections (Doc. 52) are overruled . The Report and Recommendation (Doc. 48) is accepted and adopted in full .
2. Defendant's Motion to Dismiss Indictment (Doc. 33) is granted . The indictment in the above-captioned matter against Defendant Eder Said Erazo-Diaz is dismissed .
REPORT AND RECOMMENDATION
Honorable Leslie A. Bowman, United States Magistrate Judge
The District Court referred this case to the Magistrate Judge for a hearing on the defendant's motion to dismiss indictment pursuant to 8 U.S.C. § 1326(d). The defendant, Eder Said Erazo-Diaz, argues that the indictment in this case must be dismissed because the charge is based on reinstatement of an invalid prior deportation which was ordered in violation of his Fifth Amendment right to Due Process of the law. (Doc. 33). The government filed a response (Doc. 35) and the defendant filed a reply (Doc. 37). The government filed a supplemental response on 10/29/18, including exhibits 7- 22. (Doc. 46)[1]
A hearing was held on 10/18/18. No witnesses testified. Government's Exhibits 1-6 and Defendant's Exhibits 11-13 were admitted and made part of the record, by stipulation of the parties. A second hearing was held on 10/30/18. Government's Exhibits 7-22 were admitted for purposes of this motion.
Charge:
The defendant is charged by indictment with re-entry of a removed alien, in violation of 8 U.S.C. § 1326(a), enhanced by subsection (b)(1). (Doc. 7)
Motion to Dismiss:
Facts - The facts are not in dispute. The defendant is charged with illegally re-entering the United States after being removed from the country on about 9/13/17. The removal was based on an order reinstating a prior order of removal that was entered on 12/8/10. The 2010 removal order was initiated by a Notice to Appear (NTA), dated 8/1/08. (Ex. 13) The NTA before an immigration judge includes the place of the defendant's initial removal hearing but does not provide a date or time. Instead it states "a date to be set" at "a time to be set". The NTA is signed by the defendant, indicating that he requested a prompt hearing. Thereafter, the defendant was served with 11 Notices of Hearing (NOH), beginning on 8/18/08. After numerous continuances, the last notice was *875 served on 11/23/10. (Exs. 8-10, 12-18, 20) The final NOH set a master hearing on 12/8/10. A review of Exhibit 6, an audio recording of the 12/8/10 hearing, confirms that the defendant attended the removal hearing and was represented by counsel.[2] He was ordered removed and waived his right to appeal. (Ex. 21)
The Court finds that the NTA is deficient. The immigration court did not have subject matter jurisdiction. The removal order was invalid and could not be reinstated and relied on to remove the defendant from the United States.
Discussion - Due process allows a defendant charged pursuant to 8 U.S.C. § 1326, re-entry of a removed alien, to challenge the underlying removal order upon which the charge is predicated. U.S. v. Mendoza-Lopez , 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). To prevail, Title 8 U.S.C. § 1326(d) requires a defendant to demonstrate that 1) he exhausted his administrative remedies; 2) the underlying removal proceedings improperly deprived him of judicial review; and 3) the removal order was fundamentally unfair. A removal order is "fundamentally unfair" if 1) a defendant's due process rights were violated by defects in the underlying proceeding, and 2) he suffered prejudice as a result. U.S. v. Ubaldo-Figueroa , 364 F.3d 1042, 1048 (additional citation omitted).
In the present case, the defendant argues that the deportation order that was reinstated and used to remove him from the United States was unlawful and void because the NTA that initiated the proceedings did not include the date and time he was to appear, in violation of 8 U.S.C. § 1229(a)(1)(G)(i). The defendant's position is that without a NTA that complies with the statute, subject matter jurisdiction did not vest with the immigration court and any order of removal without jurisdiction was invalid. Eight C.F.R. § 1003.14(a) explains that "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." Title 8 U.S.C. § 1229 states that removal proceedings are initiated when a written notice to appear is given in person to the alien. It sets forth the information that must be provided, to include "the time and place at which the proceedings will be held", per subsection (G)(i).
The government responds that the Immigration and Nationality Act (INA) does not address when or how jurisdiction vests with the immigration court. It refers the Court to the "comprehensive framework" of regulations, including 8 C.F.R. §§ 1003.14 and 1003.15, for its position that the NTA in this case complies with the regulatory requirements that the agency is authorized to promulgate. Section 1003.15(c) sets forth the required contents for a NTA for removal proceedings. Five items are listed, but date and time of the hearing are not included. The government argues that the NTA was proper in conjunction with the NOH that followed and provided the date and time of the hearing. Its position is that the immigration court *876 properly exercised jurisdiction over the defendant.
The defendant relies on Pereira v. Sessions , --- U.S. ----, 138 S.Ct. 2105, 201 L.Ed.2d 433 (2018), for the proposition that a NTA that does not specify the date and time that the proceedings will be held is not a NTA, pursuant to § 1229. Defendant's position is that Pereira has far-reaching implications and addresses some of the same issues present in the instant case.
The government argues that the Court in Pereira stated several times that the holding was intended to be narrow and to address the intersection of the statutory provisions in 8 U.S.C. §§ 1229b(d)(1)(A) and 1229(a). The focus of the discussion was on the information a NTA must contain to trigger the Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) "stop-time rule", which ends a noncitizen's period of continuous presence in the United States for purposes of an application for cancellation of removal. According to the government, the holding cannot be expanded to apply to anything other than the stop-time rule and the Court did not address jurisdiction. The government cites Popa v. Holder , 571 F.3d 890, 895-96 (9th Cir. 2009) for its holding that the NTA and NOH together provide the alien with the required notice to initiate proceedings. It points out that although Popa was decided prior to Periera , the Supreme Court did not specifically overrule the 9th Circuit's holding that the government is permitted to use the two-step process. The government is correct in stating that Periera did not explicitly overrule Popa . Nevertheless, this court concludes, based on the Supreme Court's reasoning in Periera , that Popa is no longer good law.
In Popa , the 9th Circuit held that an alien can be ordered removed in absentia, pursuant to 8 U.S.C. s 1229a(b)(5)(A), even if the original NTA fails to specify the time and date of the hearing as long as notice of the hearing's time and date is sent in a later communication. Popa v. Holder , 571 F.3d 890 (9th Cir. 2009). The court held that this "two-step" notice procedure is permissible. The court did not explicitly explain its reasoning, but it appears that court adopted the reasoning of the 8th Circuit, which in Haider approved of the "two-step" notice procedure. Haider v. Gonzales , 438 F.3d 902, 907 (8th Cir. 2006). The Haider court concluded as follows: "The INA simply requires that an alien be provided written notice of his hearing; it does not require that the NTA served on Haider satisfy all of § 1229(a)(1)'s notice requirements." Id. The Haider court held that as long as the alien received adequate "notice" the specific statutory requirements of § 1229(a)(1) were not mandatory. The 9th Circuit apparently approved of this reasoning because when quoting the relevant removal statute, the court elided any reference to the NTA statute. The court stated as follows:
Pursuant to 8 U.S.C. § 1229a(b)(5)(A), an "alien who, after written notice ... has been provided to the alien or the alien's counsel of record, does not attend a proceeding ... shall be ordered removed in absentia if the [government] establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable."
Popa , 571 F.3d at 894 (elisions in original). Without the elision, the statute reads as follows:
Any alien who, after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the alien or the alien's counsel of record, does not attend a proceeding ... shall be ordered removed in *877 absentia if the [government] establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable ....
8 U.S.C.A. § 1229a(b)(5)(A) (emphasis added) The elided passage is not surplusage. As the Supreme Court explained in Periera , when the INA refers to the notice statute explicitly, the NTA must contain all statutory elements. The NTA in Popa failed to give the time and date of the hearing. It was therefore defective and could not trigger the removal procedure under § 1229a(b)(5)(A) contrary to the 9th Circuit's holding. This court concludes that Popa is no longer good law after Periera , and the government's reliance on Popa in the pending action is misplaced. See Pereira v. Sessions , --- U.S. ----, 138 S.Ct. 2105, 2111, 201 L.Ed.2d 433 (2018) (quoting the removal-in-absentia statute and noting that it is triggered by "written notice required under paragraph (1) or (2) of section 1229(a)").
In order to be valid, the statute requires that a NTA state the date and time of a hearing. The NTA is the trigger that confers jurisdiction on the immigration court. Neither the defendant's appearance at the hearing, nor his failure to appeal, can constitute waiver of defects in the court's subject matter jurisdiction. Pursuant to 6 U.S.C. § 521(a)(2018), the Executive Office of Immigration Review is "subject to the direction and regulation of the Attorney General". According to regulations promulgated by the Attorney General, jurisdiction vests with the immigration courts, "when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). The charging document includes a NTA. 8 C.F.R. § 1003.13. Title 8 U.S.C. § 1229(a) mandates that a NTA include the time and date of the hearing in removal proceedings.
In Periera the defendant was served with a NTA that lacked the hearing date and time, as was the defendant in the present case. The Supreme Court rejected the same argument the government makes in the instant case. The government explained that the NTA met the statutory requirements because it complied with immigration regulations, and later provided a NOH with the date and time. Congress has defined the NTA by statute. The Department of Justice has tried to circumvent the statutory requirement of date and time by promulgating a regulation that only requires date and time "where practicable." 8 C.F.R. § 1003.18(b). The government conceded in Periera that in the past three years nearly 100 percent of the NTAs omitted the time and date of the proceeding, Periera , 138 S.Ct. at 2111, allowing the exception to swallow the rule.
The Supreme Court concluded that, "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a).' " It went on to say that "[if] the three words 'notice to appear' mean anything in this context, they must mean that, at a minimum, the Government has to provide noncitizens 'notice' of the information, i.e. the 'time' and 'place' that would enable them 'to appear' at the removal hearing in the first place." Id. at 2115. "Conveying such time-and-place information to a noncitizen is an essential function of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings." Id.
Conclusion- Pursuant to 8 U.S.C. § 1229(a), 8 C.F.R. § 1003.14(a), and Periera , a valid charging document was not filed in the defendant's removal case and jurisdiction did not vest in the immigration court. Lack of jurisdiction is a defect in the immigration proceedings that caused the *878 hearing to be fundamentally unfair. It violated the defendant's due process rights, and the wrongful deportation prejudiced him. See Wilson v. Carr , 41 F.2d 704, 706 (9th Cir. 1930) ( [I]f the order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it."). Since the present case relies on an invalid deportation order, the Court recommends that the indictment be dismissed. See U.S. v. Virgen-Ponce , 320 F.Supp.3d 1164, 1166 (E.D. Wash. 2018) ; U.S. v. Carlos Pedroza-Rocha , No. EP-18-CR-1286-DB, 2018 WL 6629649, *8-9.
RECOMMENDATION:
In view of the foregoing, it is recommended that, after its independent review of the record, the District Court GRANT the motion to dismiss the indictment. (Doc. 33)
Government counsel may serve and file written objections within 14 days. If objections are not timely filed, the party's right to de novo review may be waived. No reply to objections shall be filed unless leave is granted from the District Court.
The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.
Dated this 2nd day of November, 2018.

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

Several cases from this district have reached this conclusion. See, e.g. , United States v. Mendoza-Barcenas , No. CR-18-01291-001-TUC-JAS (DTF), 2018 WL 5300397 (D. Ariz. Sept. 11, 2018), report and recommendation adopted by 2018 WL 5298423 (Oct. 24, 2018).

This issue has been decided contrary to this R & R in CR-18-0365-TUC-RCC(JR) (Doc. 50) and CR-18-1291-TUC-JAS(DTF) (Doc. 39).

During the hearing a Spanish language interpreter interpreted for the defendant only when the judge addressed him directly. No interpretation was provided when the court and the attorneys spoke to each other about the case and the law. The judge chastised the defendant throughout the hearing. The defendant's attorney stated that she had not spoken to the defendant about certain issues. She stood by silently throughout the majority of the hearing, never communicating with the defendant or intervening on his behalf. She advised the court that she had researched all possible issues that might allow for cancellation of removal and she agreed with the court's assessment that there was no relief available. The defendant was advised of the consequences of returning to the United States without permission and acknowledged that he understood.