**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ISAIAS LORENZO LOPEZ,
*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
*Respondent*.

No. 15-72406

Agency No.
A078-242-814

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 12, 2019
Pasadena, California

Filed May 22, 2019

Before: Dorothy W. Nelson and Consuelo M. Callahan,
Circuit Judges, and Edward R. Korman,[*] District Judge.

Opinion by Judge Korman;
Dissent by Judge Callahan

---

[*] The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Immigration

Granting Isaias Lorenzo Lopez's petition for review of a decision of the Board of Immigration Appeals, the panel held that a Notice to Appear that is defective under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), cannot be cured by a subsequent Notice of Hearing and therefore does not terminate the residence period required for cancellation of removal.

Lorenzo sought cancellation of removal, a form of relief from removal that requires that an applicant must, among other requirements, reside in the United States continuously for seven years after having been admitted in any status. However, under the "stop-time" rule, as relevant here, the service of a Notice to Appear under 8 U.S.C. § 1229(a) terminates an alien's residence. In Lorenzo's case, an immigration judge and the BIA found him ineligible for cancellation because his March 2008 Notice to Appear terminated his residence period before he had accrued the requisite seven years.

In *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), the Supreme Court held that a Notice to Appear, as defined in 8 U.S.C. § 1229(a), must contain the time and place at which removal proceedings will be held to trigger the stop-time rule. The panel concluded that Lorenzo's Notice to Appear

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

did not terminate his residence because it lacked time-and-place information.

However, because Lorenzo also received a subsequent Notice of Hearing that advised him of the time and place of his proceedings, the Attorney General argued that the Notice of Hearing cured the defective Notice to Appear and triggered the stop-time rule. The Attorney General relied on *Popa v. Holder*, 571 F.3d 890 (9th Cir. 2009), which held that a Notice to Appear that fails to include the date and time of an alien's deportation hearing, but that states that a date and time will be set later, is not defective so long as a notice of the hearing is later sent to the alien.

The panel held that a Notice to Appear that is defective under *Pereira* cannot be cured by a subsequent Notice of Hearing, explaining that the plain language of the statute foreclosed the Attorney General's argument and that *Pereira* had effectively overruled *Popa*.

The panel noted that the BIA reached a conclusion contrary to the panel's holding in *Matter of Mendoza-Hernandez*, 27 I. & N. Dec. 520 (BIA 2019) (en banc), where, over a vigorous dissent, a closely divided BIA held that a Notice of Hearing that contains time-and-place information perfects a deficient Notice to Appear and triggers the stop-time rule. However, the panel declined to defer to that conclusion because: (1) the BIA acknowledged that *Pereira* could be read to reach a different result, and the courts owe no deference to agency interpretations of Supreme Court opinions; (2) the BIA ignored the plain text of the statute; and (3) the BIA relied on cases that cannot be reconciled with *Pereira*.

Thus, the panel concluded that, because Lorenzo never received a valid Notice to Appear, his residency continued

beyond 2008 and, accordingly, he has resided in the United States for over seven years and is eligible for cancellation of removal.

Dissenting, Judge Callahan wrote that she does not read *Pereira* as holding that the notice of the time and place must be provided in a single document. Rather, Judge Callahan reads *Pereira* as allowing the Department of Homeland Security to cure a deficient notice to appear by subsequently providing a noncitizen with actual notice of the time and place of the removal proceedings, with the result that the stop-time rule is triggered upon the noncitizen's receipt of the supplemental notice.

## COUNSEL

Jan Joseph Bejar (argued), Law offices of Jan Joseph Bejar P.L.C., San Diego, California, for Petitioner.

M. Jocelyn Lopez Wright (argued), Senior Litigation Counsel; Briena Strippoli, Trial Attorney; Melissa Neiman-Kelting, Assistant Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

## OPINION

KORMAN, District Judge:

Isaias Lorenzo Lopez was born in Oaxaca, Mexico in 1984. In September 1998, when he was fourteen years old, he arrived in the United States to be with his father, a lawful

permanent resident ("LPR"). Lorenzo was paroled into the United States and, two years later, on February 12, 2002, he became an LPR. While in the United States, Lorenzo graduated from high school, receiving good grades while working to support his family. After graduating, he continued to work six days a week on a farm to support his two U.S. citizen children and their mother.

But his record, which includes two misdemeanor convictions for which he served a total of 10 days in jail, is not unblemished. This case arises out of a separate incident that occurred on March 14, 2008: Lorenzo agreed to help Adriana Lopez Estevez enter the United States illegally by furnishing her with a U.S. citizen's birth certificate and driving to Tijuana to pick her up. When they attempted to return to the United States through the San Ysidro port of entry, border agents discovered that Adriana was not actually a U.S. citizen and had no documents authorizing her entry into the country. The agents arrested Lorenzo, and he confessed to attempting to assist Adriana to enter the United States because he felt pity for her. Immediately following his arrest, the Department of Homeland Security ("DHS") commenced removal proceedings by filing a Notice to Appear and serving it on Lorenzo.

At his removal proceeding, Lorenzo sought cancellation of removal under 8 U.S.C. § 1229b(a) based on his LPR status. To be eligible for cancellation of removal, an LPR must, among other requirements, "reside[] in the United States continuously for 7 years after having been admitted in any status." 8 U.S.C. § 1229b(a)(2). The IJ concluded that Lorenzo was admitted in February 2002 when he became an LPR and that the March 2008 Notice to Appear terminated his residence period. Because Lorenzo had resided in the United States for only six years and one month, he was

deemed ineligible for cancellation of removal. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision. Lorenzo appealed.

While his appeal was pending, the Supreme Court decided *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). *Pereira* held that, as defined in 8 U.S.C. § 1229(a), a Notice to Appear must contain "[t]he time and place at which the [removal] proceedings will be held," and that such definition applies wherever the term is used. *Pereira*, 138 S. Ct. at 2116. Because an alien's residence is terminated by service of a "notice to appear under section 1229(a)," 8 U.S.C. § 1229b(d)(1), absent time and place information, a purported Notice to Appear may not trigger the "stop-time" provision. *Id.* at 2110. Because the Notice to Appear issued to Lorenzo did not contain that information, it was defective and did not trigger the stop-time provision. Nevertheless, in April 2008, the Immigration Court advised Lorenzo of the time, date, and location of his proceeding by issuing a separate document labeled "Notice of Hearing." In light of *Pereira*, we ordered supplemental briefing on "[w]hether a Notice of Hearing that contains the time and place at which an alien must appear cures a Notice to Appear that is defective under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), such that the 'stop-time' rule is triggered upon receipt of the Notice of Hearing."

## STANDARD OF REVIEW

We review questions of law, such as "the interpretation and construction of statutes," de novo, *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1041 (9th Cir. 2001), "except to the extent that deference is owed to the BIA's determination of the governing statutes and regulations." *Aragon-Salazar v. Holder*, 769 F.3d 699, 703 (9th Cir. 2014). "Questions of law that can be answered with 'traditional tools of statutory

construction' are within the special expertise of courts, not agencies, and are therefore answered by the court de novo." *Ayala-Chavez v. INS*, 945 F.2d 288, 294 (9th Cir. 1991) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987)), *superseded by statute on other grounds as stated in Urbina-Mauricio v. INS*, 989 F.2d 1085, 1088 n.3 (9th Cir. 1993). If "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

## DISCUSSION

Section 1229b(a) provides for "[c]ancellation of removal for certain permanent residents" who satisfy three prerequisites: "the alien (1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a). As to the second requirement, two events may terminate an alien's residence, even if he still lives in the country: service of a Notice to Appear under Section 1229(a), or commission of "an offense referred to in section 1182(a)(2) . . . that renders the alien inadmissible . . . or removable." *Id.* § 1229b(d)(1) (the "stop-time" rule); *see also Nguyen v. Sessions*, 901 F.3d 1093, 1096 (9th Cir. 2018). Only the former is relevant here.

To trigger the stop-time rule, a Notice to Appear must contain all items listed in Section 1229(a)(1), including the date, time, and place of the removal proceeding. *Pereira*, 138 S. Ct. at 2113–14. Although "much of the information Section 1229(a)(1) calls for does not change and is therefore included in standardized language on the I-862 notice-to-

appear form," "time-and-place information in a notice to appear will vary from case to case." *Id.* at 2113 (quotation marks omitted). Accordingly, *Pereira* focused its analysis on the omission of that information, ultimately holding that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." *Id.* at 2113–14 (quoting 8 U.S.C. § 1229b(d)(1)). Under *Pereira*, the Notice to Appear Lorenzo received in March 2008 did not terminate his residence. The Notice of Hearing he subsequently received in April 2008 contained the time and place of his removal proceeding but did not contain many of the other requirements of a Notice to Appear. Nevertheless, relying on our holding in *Popa v. Holder*, 571 F.3d 890, 896 (9th Cir. 2009), the Attorney General argues that this Notice of Hearing cured the defective Notice to Appear and triggered the stop-time provision.

The plain language of the statute forecloses such a result. *Popa*'s holding that "a Notice to Appear that fails to include the date and time of an alien's deportation hearing, but that states that a date and time will be set later, is not defective so long as a notice of the hearing is in fact later sent to the alien" rested on three grounds. *Popa*, 571 F.3d at 896. These grounds have been "undercut" by *Pereira* such that "the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Thus, we reject *Popa* "as having been effectively overruled." *Id.*

First, *Popa* explained that we "silently . . . adopted the rule that the time and date of a removal proceeding can be sent after the first notice to appear" because we "never held that the [Notice to Appear] *cannot* state that the time and place of the proceedings will be set at a future time."

571 F.3d at 895 (emphasis added). Putting aside the propriety of adopting rules through judicial silence, *Pereira* resoundingly rejected what *Popa* deemed "silently adopted." *Pereira*, like *Popa*, involved a Notice to Appear ordering the alien to appear at a time and date "to be set." 138 S. Ct. at 2112 (emphasis omitted). But the Supreme Court held that a notice lacking specific time and date information is "not a notice to appear." *Id.* at 2118 (quotation marks omitted).

More precisely—indeed, more compellingly—the Supreme Court held that "when the term 'notice to appear' is used elsewhere in the statutory section, including as the trigger for the stop-time rule, it carries with it the substantive time-and-place criteria required by § 1229(a)." *Id.* at 2116. Unlike *Popa*, this holding relies on unambiguous statutory language. Specifically, 8 U.S.C. § 1229b(d)(1) provides that "any period of continuous residence . . . shall be deemed to end . . . when the alien is served a notice to appear under section 1229(a)," incorporating the definition of a Notice to Appear found in Section 1229(a), which includes information regarding the "time and place" of the hearing. *Id.* § 1229(a). In other words, any document containing less than the full set of requirements listed in Section 1229(a)(1) is not a Notice to Appear within the meaning of the statute— regardless of how it is labeled by DHS—and does not terminate an alien's residence. While *Popa* held that a Notice to Appear that states "the time and place of the proceedings will be set at a future time," is "not statutorily defective," 571 F.3d at 894–96, *Pereira* makes clear that it is.

Second, *Popa* relied on now-outmoded out-of-circuit case law in adopting a "two-step notice procedure." *See id.* at 895–96 (citing *Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009); *Dababneh v. Gonzales*, 471 F.3d 806, 809–10 (7th Cir. 2006); *Haider v. Gonzales*, 438 F.3d 902,

907 (8th Cir. 2006)). Each of the three decisions upon which *Popa* relied were issued before *Pereira*, and none binds us today. More importantly, none of these cases comports with the unambiguous statutory text. *Haider* held that the law "simply requires that an alien be provided written notice of his hearing; it does not require that the [Notice to Appear] served on Haider satisfy all of § 1229(a)(1)'s notice requirements." 438 F.3d at 907. This is flatly wrong. As *Pereira* explained, the term "Notice to Appear" carries with it all of Section 1229(a)(1)'s notice requirements wherever it appears. *Pereira*, 138 S. Ct. at 2116. *Dababneh*, in turn, relied on *Haider* and certain inapposite regulations, discussed below, rather than the statute. 471 F.3d at 809. And *Gomez-Palacios* merely concluded "that information may be provided in a subsequent [Notice of Hearing]," primarily relying on *Haider* and *Dababneh*. 560 F.3d at 359. *Popa* likewise hung its hat on *Haider*'s faulty premise. *See Popa*, 571 F.3d at 895–96.

Third, the final ground undergirding *Popa* was a regulation—namely, 8 C.F.R. § 1003.18. That provision requires that DHS

> provide in the Notice to Appear, the time, place and date of the initial removal hearing, *where practicable*. If that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice . . . of the time, place, and date of hearing.

8 C.F.R. § 1003.18(b) (emphasis added). We reasoned that such a regulation is necessary "[b]ecause circumstances may arise in which it is not feasible . . . to state the date, time, and

place of a removal hearing at the time the [Notice to Appear] is sent." *Popa*, 571 F.3d at 896. *Pereira* rejected this rationale, *see* 138 S. Ct. at 2118–19, and we have acknowledged that "*Pereira* appears to discount the relevance of 8 C.F.R. § 1003.18 in the . . . context of eligibility for cancellation of removal." *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 n.1 (9th Cir. 2019).

In any event, the regulation rewrites the statute. As an initial matter, 8 C.F.R. § 1003.18 does not, on its face, relate to the stop-time rule. It pertains to scheduling cases and providing notice, implicating the stop-time rule only to the extent it purports to alter the requirements of a Notice to Appear. But the statute already enumerates what a Notice to Appear must contain. Even if we agreed with DHS that it makes sense to only issue time and place information "where practicable," neither we nor DHS can override the clear statutory command that time and place information be included in *all* Notices to Appear. *Pereira*, 138 S. Ct. at 2118–19; *see also Comm'r v. Asphalt Prods. Co.*, 482 U.S. 117, 121 (1987) (per curiam) ("Judicial perception that a particular result would be unreasonable may enter into the construction of ambiguous provisions, but cannot justify disregard of what Congress has plainly and intentionally provided.").

Moreover, the Supreme Court scrapped the notion that "practical considerations"—namely, that DHS may not be able to access the Immigration Court's calendar and properly schedule proceedings when it issues a Notice to Appear— excuse the failure to provide "specific time, date, and place" information. *Pereira*, 138 S. Ct. at 2118–19. Such "considerations . . . do not justify departing from the statute's clear text." *Id*. at 2118. Yet *Popa* did just that. We cannot now rely on those same considerations to advance a

policy other than what Congress passed and the President signed. *See Xi v. INS*, 298 F.3d 832, 839 (9th Cir. 2002) ("[A] decision to [rearrange] or rewrite the statute falls within the legislative, not the judicial, prerogative."). Nor may DHS displace legislation with regulation. *See League of Wilderness Defs./Blue Mountains Biodiversity Project v. Forsgren*, 309 F.3d 1181, 1190 (9th Cir. 2002) ("An agency simply may not interpret a regulation in a way that contravenes a statute.").

The Attorney General charts his course around the statute by arguing that a Notice of Hearing may cure a defective Notice to Appear. The phrase "notice of hearing"—or anything resembling it—does not appear in the law. Rather, the statute refers to a "notice to appear" and a "notice of change in time or place of proceedings" and delineates when each document may be issued and what it must contain. *See* 8 U.S.C. § 1229(a); *see also Pereira*, 138 S. Ct. at 2114. Nevertheless, the Attorney General counters that the law is silent on whether the required notice must consist of one document or if it may consist of multiple documents that collectively contain the necessary information.

Far from silent, the statute speaks clearly: residence is terminated "when the alien is served *a notice* to appear." 8 U.S.C. § 1229b(d)(1) (emphasis added). The use of the singular indicates that service of a single document—not multiple—triggers the stop-time rule. *Cf. United States v. Hayes*, 555 U.S. 415, 421 (2009) ("We note as an initial matter that [the statute] uses the word 'element' in the singular, which suggests that Congress intended to describe only one required element."); *Delgado v. Holder*, 648 F.3d 1095, 1112 (9th Cir. 2011) (Reinhardt, J., concurring) ("The singular article 'a' could not make any clearer the singular

nature of 'a particularly serious crime': the agency must identify *one* offense of conviction . . . .").

Rather than contending, as the Attorney General does, that the statute is silent, the dissent argues that the Dictionary Act, 1 U.S.C. § 1, requires all references to "a notice" or "the notice" in the statute be read as referring to both the singular and the plural, thus permitting multiple documents to collectively satisfy the requirements of a Notice to Appear. We reject this position for two reasons.

First, the Supreme Court has held that reliance on the Dictionary Act's rule regarding "words importing the singular," 1 U.S.C. § 1, is appropriate only "[o]n the rare occasions when . . . doing so [is] 'necessary to carry out the evident intent of the statute.'" *Hayes*, 555 U.S. at 422 n.5 (quoting *First Nat'l Bank in St. Louis v. Missouri*, 263 U.S. 640, 657 (1924)). The "essential function of a notice to appear" is to "[c]onvey[] . . . time-and-place information to a noncitizen" and "facilitate appearance at [the] proceedings." *Pereira*, 138 S. Ct. at 2115. A single, complete Notice to Appear achieves that aim, so resort to the Dictionary Act's singular/plural rule and attendant context-driven guidance is unnecessary. Second, reading Section 1229b as the dissent does, the stop-time provision would be triggered "when the alien is served *notices* to appear under section 1229(a)." Nevertheless, no matter how many documents are sent, none qualifies as a "notice to appear" unless it contains the information Section 1229(a) prescribes. *See Pereira*, 138 S. Ct. at 2110.

The BIA has reached a conclusion contrary to our holding. Over a vigorous dissent, a closely divided BIA held that "where a notice to appear does not specify the time or place of an alien's initial removal hearing, the subsequent service of a notice of hearing containing that information

perfects the deficient notice to appear, triggers the 'stop-time' rule, and ends the alien's period of continuous residence or physical presence in the United States." *Matter of Mendoza-Hernandez*, 27 I. & N. Dec. 520, 529 (BIA 2019) (en banc). We do not defer to this conclusion for three reasons.

First, the threshold issue addressed by the BIA was whether *Pereira* definitively resolved whether "subsequent service of a notice of hearing containing [time and place] information perfects the deficient notice to appear, trigger[ing] the 'stop-time' rule." *Id.* The BIA acknowledged that "*Pereira* can be . . . read in a literal sense to reach a different result," *i.e.*, a result contrary to the BIA's ultimate holding. *Id.* Nevertheless, the BIA rejected such a "literal reading" and now the Attorney General invites us to defer to the BIA's conclusion. But "a reviewing court should defer to an administrative agency only in those areas where that agency has particular expertise." *Ayala-Chavez*, 945 F.2d at 294. "There is therefore no reason for courts—the supposed experts in analyzing judicial decisions—to defer to agency interpretations of the Court's opinions." *Akins v. FEC*, 101 F.3d 731, 740 (D.C. Cir. 1996) (en banc), *vacated on other grounds by FEC v. Akins*, 524 U.S. 11 (1998). Accordingly, we do not accord *Chevron* deference to the BIA's reading of *Pereira*.

Second, the BIA's analysis is disingenuous. *Pereira* did not merely "include[] language stating that a notice lacking the specific time and place of the removal proceeding does not equate to a notice to appear under [Section 1229(a)(1)]." *Mendoza-Hernandez*, 27 I. & N. Dec. at 529–30. Rather, the Supreme Court held that Section 1229(a)(1) *defines* what a notice to appear is, and that the definition is imported every time the term "notice to appear" is used in the statute—

especially when it is used in the stop-time rule, 8 U.S.C. § 1229b(d)(1), which refers to "a notice to appear under section 1229(a)." *Pereira*, 138 S. Ct. at 2116. The BIA ignored the plain text of the statute, violating a fundamental tenet of statutory interpretation: "The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (quotation marks omitted). More than that, the BIA disregarded the Supreme Court's holding construing the statute in accordance with its plain language.

As the dissenting opinion in *Mendoza-Hernandez* explained:

> The reasoning of the Supreme Court in *Pereira* . . . leaves little room for doubt that the Court's decision requires us to follow the plain language of the Act that the DHS must serve a [8 U.S.C. § 1229(a)(1)] "notice to appear" that includes the date, time, and place of hearing in order to trigger the "stop-time" rule. The Court in *Pereira* repeatedly emphasized the "plain text" of the "stop-time" rule and left no room for agency gap-filling as to whether an Immigration Court can "complete" or "cure" a putative "notice to appear" by subsequent issuance of a "notice of hearing" that would trigger the "stop-time" rule on the date of that event. Quite simply, . . . a "notice of hearing" is not a "notice to appear" and, therefore, it does not satisfy the requirement that the DHS serve a [Section 1229(a)(1)] "notice to appear" that specifies the date and time of hearing, in order to trigger the "stop-time" rule.

27 I. & N. Dec. at 540–41 (dissenting opinion) (footnote omitted). This rationale accords with our holding above and the plain language of the statute. The lack of ambiguity in the statutory language provides us with yet another reason to "not resort to *Chevron* deference," *Pereira*, 138 S. Ct. at 2113, and to not accord any deference to the BIA's contrary holding, as it was unmoored from the text, *see Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005). In so holding, we follow the lead of the Supreme Court's recent decision in *BNSF Railway Co. v. Loos*, 139 S. Ct. 893, 899 (2019), which interpreted a statute as we do here—relying on cross-references to similar terms across provisions—without any reference to the agency's interpretation of the same provision.

Third, to the extent the BIA relied upon the Third Circuit's holding in *Orozco-Velasquez v. Attorney General*, 817 F.3d 78 (3d Cir. 2016), or other similar holdings such as *Popa*, those cases cannot be reconciled with *Pereira*. The BIA cannot rely on abrogated decisions in hopes of securing deference from the very courts that issued the now-defunct precedent. Such an approach would be hopelessly circular. Moreover, the BIA presumes that because the issue of whether a "'perfected' notice to appear" may stop time "was not before the Court," prior decisions interpreting the stop-time rule were unaffected by *Pereira*. *Mendoza-Hernandez*, 27 I. & N. Dec. at 530. The BIA reads too much into the Court's judicial restraint and fails to recognize that none of these pre-*Pereira* decisions "take into account the Supreme Court's determination that the 'stop-time' rule contains plain and unambiguous language" that the "'stop-time' rule is triggered by service of a . . . 'notice to appear'" that specifies the time and place of a hearing as an essential part of the charging document." *Id.* at 541–43 (dissenting opinion).

Thus, we agree with the dissenters in *Mendoza-Hernandez* and accord no deference to the BIA's flawed analysis.

Skirting the statutory text, the Attorney General points to purportedly analogous areas of law where an initial defect may be cured by a litigant's subsequent acts. For instance, *Becker v. Montgomery* held that an unsigned notice of appeal is timely if signed after the time to appeal has expired. 532 U.S. 757, 760 (2001). But *Pereira* distinguished *Becker*, explaining that "omission of time-and-place information is not . . . some trivial, ministerial defect, akin to an unsigned notice of appeal. Failing to specify integral information like the time and place of removal proceedings unquestionably would deprive the notice to appear of its essential character." *Pereira*, 138 S. Ct. at 2116–17 (citations, quotation marks, and brackets omitted). Similarly, in *Scarborough v. Principi*, the Supreme Court held that amendment of a timely application that failed to include a necessary allegation was permissible because the rule requiring specific allegations was aimed, like the signature requirement in *Becker*, "at stemming the urge to litigate irresponsibly." 541 U.S. 401, 416 (2004) (quoting *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 116 (2002)). The *Scarborough* Court went on to explain that "the allegation does not serve an essential notice-giving function," and so curative amendment was appropriate. *Id.* at 416–17.

Conversely, the primary function of a Notice to Appear is to give notice, which is essential to the removal proceeding, *Pereira*, 138 S. Ct. at 2114–15, so the Attorney General's reliance on *Becker*, *Scarborough*, and *Edelman* is misplaced. Each of those cases allowed litigants to correct trivial or ministerial errors. The requirements of a Notice to Appear, however, are "substantive." *Id.* at 2116. Substantive defects may not be cured by a subsequent Notice of Hearing

that likewise fails to conform with the substantive requirements of Section 1229(a)(1). As nothing precludes DHS from issuing a Notice to Appear that conforms to the statutory definition, that is the appropriate course of action for the agency to follow in such situations.

DHS's ability to issue a Notice that complies with the statute limits the set of cases affected by our holding. Retrospectively, although nearly all Notices to Appear issued between 2015 and 2018 lacked time and date information, *see Pereira*, 138 S. Ct. at 2111, the Attorney General conceded at oral argument that DHS can reissue complete Notices to Appear to those who have been served defective ones. The cases most affected by our holding will be those where a defective Notice to Appear issued so near to when an alien attained the requisite years of residence that DHS cannot reissue a complete Notice to Appear before the statutory period elapses. Prospectively, the Supreme Court noted that software exists that would enable DHS and the Immigration Court to "schedule hearings before sending notices to appear." *Pereira*, 138 S. Ct. at 2119.

In a final attempt to salvage his argument, the Attorney General suggests that *Karingithi* should inform our decision. But *Karingithi* addressed whether a defective Notice to Appear vests the Immigration Court with jurisdiction. *Karingithi*, 913 F.3d at 1160–61. It did not address whether a Notice of Hearing can cure a defective Notice to Appear. Instead, we held that because a regulation properly governs what a notice must contain to vest jurisdiction, the statutory definition of a Notice to Appear did not control. *Id.* at 1161. As we explained, "*Pereira* simply has no application [to the Immigration Court's jurisdiction]. . . . [T]he only question [in *Pereira*] was whether the petitioner was eligible for cancellation of removal." *Id*. But our decision here is based

on the statute's text, not a regulation, and we are assessing eligibility for cancellation of removal.

Finally, the dicta from the Eleventh Circuit's unpublished non-precedential opinion in *Molina-Guillen v. U.S. Attorney General*, 2019 WL 669715 (11th Cir. Feb. 19, 2019), does not alter our conclusion. Not only had the petitioner abandoned the argument that a Notice of Hearing cannot cure a defective Notice to Appear, but *Molina-Guillen* does not engage the statutory text. *Id.* at \*4. It merely notes that a subsequent "Notice of Hearing, which contained the date and time of the removal hearing, was served on Molina-Guillen . . . . Together, the December 2005 Notice to Appear and the March 2006 Notice of Hearing fulfilled the notice requirements in § 1229(a)(1)." *Id.* We are unpersuaded by this cursory analysis.

## CONCLUSION

We hold that a Notice to Appear that is defective under *Pereira* cannot be cured by a subsequent Notice of Hearing. The law does not permit multiple documents to collectively satisfy the requirements of a Notice to Appear. Thus, Lorenzo never received a valid Notice to Appear and his residency continued beyond 2008. Accordingly, he has resided in the United States for over seven years and is eligible for cancellation of removal.

Because we hold that Lorenzo's residence was not terminated, there is no need to opine on his other arguments. Moreover, the question presented here is purely legal, so remand to consider the impact of *Pereira* is unwarranted. *See Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 741 (9th Cir. 1991) ("[A] purely legal inquiry . . . does not require remand."); *see also Ortiz-Magana v. Mukasey*, 542 F.3d 653, 658 n.1 (9th Cir. 2008) (declining to remand

where "no additional information would be available that previously was not" and the panel "can resolve the legal question on the basis of available evidence"). Accordingly, we **GRANT** the petition for review.

---

CALLAHAN, Circuit Judge dissenting:

I agree with the majority that the United States Supreme Court's opinion in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), incontrovertibly establishes that for a notice to appear to trigger the "stop-time rule,"[1] the noncitizen must be provided with the time and place of the removal proceedings.[2] However, I do not read *Pereira* as holding that the notice of the time and place must be provided in a single document. Rather, I read *Pereira* as not prohibiting the Government from supplementing a deficient notice to appear by subsequently providing notice of the time and place of the removal proceedings, with the consequence that the stop-time rule is triggered upon receipt of the supplemental notice.

Initially, it should be noted that the majority's critical holding—that all items listed in 8 U.S.C. § 1229(a)(1) must

---

[1] Noncitizens who are subject to removal proceedings but have accrued 10 years of continuous physical presence in the United States may be eligible for cancellation of removal. 8 U.S.C. § 1229(b)(1). The "stop-time rule" set forth in § 1229b(d)(1) provides that the period of continuous physical presence ends when a noncitizen is served with a notice to appear under 8 U.S.C. §1229(a). *See Pereira*, 138 S. Ct. at 2109.

[2] Consistent with the Supreme Court's opinion in *Pereira*, 138 S. Ct. 2110 n.1, the term "noncitizen" is used to refer to any person who is not a citizen or national of the United States.

be contained in a single Notice to Appear—was not in issue in *Pereira*, and accordingly was not directly addressed by the Supreme Court. Pereira entered the United States as a temporary "non-immigrant visitor" in 2000. *Pereira*, 138 S. Ct. at 2112. He was arrested for operating a vehicle while under the influence of alcohol in 2006. *Id*. In May 2006, the Department of Homeland Security ("DHS") served him with a "Notice to Appear," which stated that removal proceedings were being initiated against him for overstaying his visa, but "the notice did not specify the date and time of Pereira's removal hearing." *Id*. More than a year later, DHS attempted to mail Pereira "a more specific notice setting the date and time for his initial removal hearing." *Id.* "But that second notice was sent to Pereira's street address rather than his post office box (which he had provided to DHS), so it was returned as undeliverable." *Id*. In 2013, Pereira was arrested for driving without his headlights on and was subsequently detained by DHS. *Id.* By this time, if the stop-time rule was not triggered by the 2006 notice, Pereira had long since accrued the necessary years of continuous physical presence in the United States to be eligible for cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1). Because DHS failed to serve Pereira with a supplemental notice prior to Pereira having been in the United States for over a dozen years, the Supreme Court was not called upon to, and did not, address whether all the requirements of a notice to appear listed in § 1229(a) must be contained in a single document.[3]

---

[3] Title 8 U.S.C. § 1229(a)(1) states:

    (a) Notice to appear

(1) In general

In removal proceedings under section 1229a of this title, written notice (in this section referred to as a "notice to appear") shall    be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying the following:

(A) The nature of the proceedings against the alien.

(B) The legal authority under which the proceedings are conducted.

(C) The acts or conduct alleged to be in violation of law.

(D) The charges against the alien and the statutory provisions alleged to have been violated.

(E) The alien may be represented by counsel and the alien will be provided (i) a period of time to secure counsel under  subsection (b)(1) and (ii) a current list of counsel prepared under subsection (b)(2).

(F)(i) The requirement that the alien must immediately provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting proceedings under section 1229a of this title.

(ii) The requirement that the alien must provide the Attorney General immediately with a written record of any change of the alien's address or telephone number.

Instead, the Court first narrowed the dispositive question to whether "a 'notice to appear' that does not specify the 'time and place at which the proceedings will be held,' as required by § 1229(a)(1)(G)(i), trigger[s] the stop-time rule." *Id.* at 2113. It then held, contrary to the position advocated by the Government, that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's proceeding is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." *Id.* at 2114.

From the *Pereira* holding, the majority leaps to the conclusion that the notice of hearing that Lorenzo subsequently received—that did provide notice of the time and place of his removal proceeding—did not, as a matter of law, cure the defect in the initial notice to appear, and that the only cure is for DHS to issue, now years later, a new "Notice To Appear." Maj. Op. at 19.

The majority first supports its conclusion not by relying on the Supreme Court's opinion in *Pereira*, but by rejecting the Government's reliance on our opinion in *Popa v. Holder*, 571 F.3d 890 (9th Cir. 2009). Maj. Op. at 7–10. But the Supreme Court's rejection of our holding in *Popa* that a notice to appear need not contain the time and place of the

---

(iii) The consequences under section 1229a(b)(5) of this title of failure to provide address and telephone information pursuant to this subparagraph.

(G)(i) The time and place at which the proceedings will be held. (ii) The consequences under section 1229a(b)(5) of this title of the failure, except under exceptional circumstances, to appear at such proceedings.

proceedings, says nothing about whether all items listed in § 1229(a)(1) need to be contained in a single document.

Similarly, the majority's assertion that the Supreme Court "scrapped the notion that 'practical considerations' . . . excuse[d] the failure to provide 'specific time, date and place' information,'" Maj. Op. at 11, again says nothing about whether a notice that fails to provide this information can be cured by a subsequent document that fully provides specific time, date, and place information.

Instead, the majority asserts that § 1229(a) "speaks clearly" in rejecting the position that the requisite notice may be contained in more than one document. The majority reasons that because 8 U.S.C. § 1229b(d)(1) states "when the alien is served *a notice* to appear," the "use of the singular indicates that service of a single document—not multiple— triggers the stop-time rule." Maj. Op. at 12. But even if § 1229b(d)(1)'s use of the singular contemplates that the notice to appear is *generally* issued in a single document, it does not follow that all the criteria listed in § 1229(a) *must* be contained in a single document.[4]

The majority reads too much into the "use of the singular" in § 1229b. Title 1 U.S.C. § 1 states that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise– words importing the singular include and apply to several persons, parties or things. . . ." The statutory context provides no indication that the use of the singular in § 1229b(d)(1) imposes a formalistic

---

[4] A further indication that the Supreme Court in *Pereira* was concerned with the general need for notice of the time and place of the removal proceedings may be gleaned from its discussion of the need for a "notice to appear," rather than a single "Notice to Appear" containing all of the criteria set forth in § 1229(a)(1).

requirement that the notice be provided within a single document and that a deficiency may not be "cured" by a subsequent notice that includes the previously missing time and place information. Section 1229(a)(2) contemplates that there may be changes in the time or place of the removal proceedings of which the noncitizen must be notified. Here, Lorenzo was served with an April 11, 2008 notice of hearing setting forth the time and place for his removal proceedings and he appeared, with counsel, before the IJ on June 27, 2018. There can be no doubt that Lorenzo had actual notice of the time and place of his removal proceedings well before his June 27, 2018 hearing. The statute's use of the singular is too slender a reed to support the majority's insistence that all the criteria in § 1229(a)(1) must be contained in a single document.

The majority's cite to *United States v. Hayes*, 555 U.S. 415, 421 (2009), hardly strengthens the reed because, in my view, the majority's reliance on "a notice" frustrates, rather than furthers, "Congress' aim." *Id*. at 422 n.5. Furthermore, the Board of Immigration Appeals, sitting en banc, has declined to read the provision as requiring that the "written notice be in a single document." *Matters of Mendoza-Hernandez and Capula-Cortes*, 27 I. & N. Dec. 520, 531 (BIA 2019) (en banc).[5]

---

[5] The BIA continued:

> Rather, it may be provided in one or more documents—in a single or multiple mailings. And it may be served personally, by mail, or by a combination of both, so long as the essential information is conveyed in writing and fairly informs the alien of the time and place of the proceeding.

The Supreme Court's concern in *Pereira* was with noncitizens receiving notification of the time and place of the removal proceedings and not with whether all the information was contained in a single document, entitled "Notice to Appear." In other words, the court was concerned with the noncitizen receiving the information rather than the form of the notice. Indeed, all the concerns underlying the Supreme Court's ruling in *Pereira* are satisfied by a properly served second document that supplements a deficient initial notice. The second notice then provides noncitizens with notice of the time and place of the proceedings that "is the essential function of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceeding." *Pereira*, 138 S. Ct. at 2115. Similarly, such a notice would assure the noncitizen of the opportunity to secure counsel before the hearing. *See id*. at 2114–15; *see also* 8 U.S.C. § 1229(a)(2)(b)(1) (requiring that in order to allow the noncitizen to secure counsel, the hearing date shall not be scheduled earlier than 10 days after the service of the notice). Also, allowing the Government to furnish time and place information in a second document and triggering the stop-time rule on receipt of that notice make it more difficult for a noncitizen "to manipulate or delay removal proceedings to 'buy time.'" *Id*. at 2119.

My reading of *Pereira* is also the BIA's position. *Mendoza-Hernandez*, 27 I. & N. Dec. 520. In reading *Pereira*, the BIA stressed the Court's restriction of its ruling to a narrow issue, and its choice not to address the two-part notice process. *Id*. at 527–28. The BIA noted that the Court "explained that the fundamental purpose of notice is to convey essential information to the [noncitizen], such that

*Mendoza-Hernandez*, 27 I. & N. Dec. at 531.

the notice creates a reasonable expectation of the [noncitizen's] appearance at the removal proceeding." *Id*. at 531. The BIA held:

> We conclude that in cases where a notice to appear does not specify the time or place of [a noncitizen's] initial removal hearing, the subsequent service of a notice of hearing containing that information perfects the deficient notice to appear, triggers the "stop-time" rule, and ends the [noncitizen's] period of continuous residence or physical presence in the United States.

*Id.* at 529.**[6]** *Id*. at 535. The BIA further observed that "[n]one of the courts involved in the circuit split had held that service of a subsequent notice of hearing that included time and place information was insufficient to perfect the notice to appear." *Id*. at 534–35.

The majority declines to defer to *Mendoza-Hernandez*, but the majority's reasoning is not persuasive. It first suggests that we do not defer to an agency's interpretation of a Supreme Court opinion. Maj. Op. at 14. True enough, but this does not mean that the position of the agency most effected by a statute does not deserve some consideration. Moreover, as I have explained, my reading of *Pereira*, although consistent with the BIA's reading, is in no way

---

**[6]** This position was foretold in the BIA's decision in *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 447 (BIA 2018). There the BIA held that a notice to appear that did not specify the time and place of a noncitizen's removal hearing nonetheless vests the IJ with jurisdiction over the removal proceedings. The BIA emphasized that unlike Pereira, Bermudez-Cota "was properly served with both a notice to appear *and* a subsequent notice of hearing." *Id*. at 443.

based on the BIA's decision. Second, the majority asserts that the BIA's analysis is disingenuous. Maj. Op. at 14. But this is just another way of disagreeing with my perspective and the BIA's perspective, as demonstrated by the majority's reliance on the *dissent* in *Mendoza-Hernandez*. The majority asserts that there is no ambiguity in the statute, but I find the BIA's recognition that *Pereira* can be read in a literal sense to reach a different result to be a fairer description of the overall question. Finally, the majority argues that the BIA may not rely on prior circuit decisions, such as *Popa*, because they were abrogated by *Pereira*. Maj. Op. at 16. But *Pereira*'s abrogation of cases such as *Popa* was not a ruling on the two-part notice process at issue in this case.

I continue to read *Pereira* as allowing for a two-part notice process and find this approach to be consistent with our opinion in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019). Karingithi, like Lorenzo, had received a notice to appear that did not specify the date and time of the removal hearing.[7] *Id.* at 1159. Karingithi argued "that if a notice to appear does not state the time for her initial removal hearing, it is not only defective under § 1229(a), but also does not vest jurisdiction with the IJ." *Id.* at 1160. We disagreed, holding that the Immigration Court's jurisdiction was governed by regulation, not by § 1229(a), and thus a notice to appear need not include time and date information to vest jurisdiction in the IJ. *Id.* We held that "*Pereira* simply has no application here," noting that the only question in *Pereira* "was whether the petitioner was eligible for cancellation of removal," and the "Court's resolution of

---

[7] Our opinion also noted that Karingithi "had actual notice of the hearings through multiple follow-up notices that provided the date and time of each hearing." *Id.* at 1159.

that 'narrow question' cannot be recast into a broad jurisdictional rule." *Id*. at 1161.

Although *Karingithi*, as well as *Bermudez-Cota*, 27 I. & N. Dec. 441, concerned the interpretation of regulations that are not applicable to Lorenzo's case, the majority, like Karingithi and Bermudez-Cota, seeks to expand the "narrow question" addressed in *Pereira* into a broad pronouncement. The sounder approach, as reflected in our opinion in *Karingithi*, and in the BIA's en banc opinion in *Mendoza-Hernandez* is to abide by the Supreme Court's statement that it decided the "much narrower" issue. *Pereira*, 138 S. Ct. at 2113.

Furthermore, we should not frustrate Congressional intent by expanding *Pereira* beyond its narrow holding. Section 1229b sets forth a clear policy that a noncitizen becomes eligible for cancellation of removal only after residing in the country for a certain number of years. Furthermore, § 1229b(d)(1) clearly states that "any period of continuous residence or continuous physical presence" ends "when the alien is served a notice to appear." *Pereira* requires that DHS's misinterpretation of the statute as permitting notices that do not set forth the time and place for removal proceedings be corrected. That misinterpretation and the concerns underlying *Pereira* are resolved by allowing DHS to cure an initial notice to appear with a subsequent notice of hearing setting forth the time and place of the removal proceeding and stopping the clock upon the noncitizen's receipt of the subsequent notice. Requiring DHS to serve new notices to appear on all noncitizens who received deficient notices to appear, rather than allowing for subsequent notices of hearing, is a windfall for noncitizens and unnecessarily interferes with Congress's intent.

I read *Pereira* as allowing DHS to cure a deficient notice to appear by subsequently providing a noncitizen with actual notice of the time and place of the removal proceedings, with the result that the stop-time rule is triggered upon the noncitizen's receipt of the supplemental notice. Accordingly, I dissent from the majority's opinion.