**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0078n.06

**Case No. 19-3476**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Feb 03, 2020

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BUN CCHAY CHEAT, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent-Appellee, | ) | |
| | ) | O P I N I O N |

**BEFORE: MERRITT, CLAY, and GRIFFIN, Circuit Judges.**

**CLAY, Circuit Judge**. Petitioner Bun Cchay Cheat, a noncitizen, appeals an order of the Board of Immigration Appeals (BIA), dated May 15, 2019, denying his motion to reopen removal proceedings. Cheat sought to reopen removal proceedings because the Notice to Appear that initiated proceedings against him in November 2009 was defective because it did not include the date and time of his hearing. Cheat argues that the Supreme Court's decision in *Pereira v. Sessions*, — U.S. —, 138 S. Ct. 2105 (2018), prevents the BIA from curing its defective Notice to Appear with a subsequent Notice of Hearing. However, in *Garcia-Romo v. Barr*, 940 F.3d 192 (6th Cir. 2019), we held precisely the opposite. Because this Court has already rejected the narrow legal ground that Cheat claims justifies reversing the BIA's order, a point acknowledged by Cheat in his reply brief, we **DENY** Cheat's petition for review.

**I. BACKGROUND**

Petitioner Bun Cchay Cheat is a native and citizen of Cambodia. On August 21, 2001, he entered the United States on a C1 visa as a nonimmigrant in transit. He was permitted to remain in the United States until September 28, 2002. He failed to leave by that time. However, it was not until November 2009, that the Department of Homeland Security (DHS) issued a Notice to Appear (NTA) to Cheat, thereby initiating removal proceedings against him. The NTA asserted that Cheat had sought to obtain permanent resident status via fraud or material misrepresentation. Importantly, the NTA did not specify a date or time for a removal hearing. This was rectified on November 13, 2009, when the Immigration Court sent Cheat a Notice of Hearing, directing him to appear on April 21, 2010.

On that date, the Immigration Court sent Cheat another notice, this one informing him that he must appear on June 23, 2010 for a hearing. In response, Cheat denied that he was subject to removability based upon the grounds alleged in the NTA. On April 26, 2010, DHS amended the NTA to withdraw the fraud charge and add a charge that Cheat was subject to removal because he had remained in the United States longer than permitted by his visa. At the June 23 hearing, Cheat, through counsel, conceded that he was subject to removal. The Immigration Judge presiding over the hearing issued a removal order. Cheat did not appeal this order.

Cheat filed his first motion to reopen with the Immigration Court on January 16, 2014. He alleged that changed country conditions in Cambodia made Cheat eligible for asylum and withholding of removal. On March 31, 2014, the Immigration Court denied his motion to reopen. Cheat filed an appeal with the BIA, which the BIA dismissed on May 27, 2015. This Court subsequently denied Cheat's petition for review of the BIA's dismissal order. *Cheat v. Lynch*, No. 15-3678 (6th Cir. Mar. 10, 2016) (order).

Cheat filed a second motion to reopen before the BIA on September 18, 2018. This motion was based upon the Supreme Court's recent decision in *Pereira v. Sessions*. In it, Cheat argued that the stop-time rule was inapplicable because the NTA did not contain the date and time of his hearing. Cheat further contended that his motion should be considered timely because it was filed within ninety days of the Supreme Court's decision in *Pereira* and so the statutory period for filing motions to reopen should be equitably tolled.

On May 15, 2019, the BIA denied Cheat's second motion to reopen. Rather than address Cheat's equitable tolling argument, it rejected his motion on the merits. According to the BIA, because Cheat was served with a Notice of Hearing before he was present in the United States for ten years, the arguably defective NTA was perfected. Therefore, the stop-time rule applied, and Cheat would be ineligible for cancellation of removal in any event. This timely petition for review followed.

## II. DISCUSSION

### A. Standard of Review

This Court reviews the denial of a motion to reopen for an abuse of discretion. *Trujillo Diaz v. Sessions*, 880 F.3d 244, 248 (6th Cir. 2018); *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006). However, questions of law involving immigration proceedings are reviewed *de novo*. *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006).

### B. The Motion to Reopen

The Attorney General may cancel the removal of a noncitizen who is inadmissible or deportable from the United States if the noncitizen establishes, *inter alia*, that she "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(b)(1)(A). However, "any

period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear under section 1229(a) of this title." 8 U.S.C. § 1229b(d)(1). This latter provision is known as the "stop-time rule" and it presents the chief roadblock to Cheat's motion to reopen. Because he was served with a Notice to Appear in 2009—less than ten years after he entered the United States in 2001—it would seem to preclude his eligibility for cancellation of removal under § 1229b(b)(1)(A). In other words, the NTA, if valid, stopped the time from running before Cheat could satisfy the ten-year continuous presence requirement to be eligible for cancellation of removal.

Cheat contends that the Supreme Court's recent decision in *Pereira v. Sessions* breathes life into his motion. In *Pereira*, the Supreme Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." *Id.* at 2113–114. Because Cheat's Notice to Appear indisputably did not include a date and time of his removal hearing, it would seem that it did not trigger the stop-time rule.[1]

Unfortunately for Cheat, this Court has already rejected his line of reasoning. Very recently, in *Garcia-Romo v. Barr*, 940 F.3d 192 (6th Cir. 2019), we held that "written communications to a noncitizen in multiple components or installments may collectively provide all the information necessary to constitute 'a notice to appear' under 8 U.S.C. § 1229b(d)." *Id.* at 201. As a result, "the government triggers the stop-time rule when it sends a noncitizen all the

---

[1] Cheat expressly does not challenge the Immigration Court's jurisdiction over his case. As Cheat acknowledges, this Court has held that the failure to include the time and date of removal proceedings does not divest an Immigration Judge of jurisdiction over the removal proceedings. *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 314–15 (6th Cir. 2018) (holding that "jurisdiction vests with the immigration court where, as here, the mandatory information about the time of the hearing . . . is provided in a Notice of Hearing issued after the NTA").

required categories of information under § 1229(a)(1)(A)-(G) through one or multiple written communications." *Id.*

That is precisely what occurred in this case. The information contained in the November 2009 NTA was incomplete, but the government cured this deficiency with its subsequent notice to appear indicating the date and time of Cheat's hearing. And because this all occurred before Cheat was physically present in the United States for ten years, he is not eligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(A). *Garcia-Romo* decided that this practice comports with the requirements of the stop-time rule. In fact, the petitioner in *Garcia-Romo* was in a situation virtually identical to Cheat's. He received an NTA in February 2012 that did not include a date and time for his hearing, followed by a Notice of Hearing in April 2012 providing the missing information. *Id.* at 197. As discussed above, we rejected the petitioner's claim that the stop-time rule was not triggered once the Notice of Hearing issued and identified the date and time of his hearing.

Therefore, *Garcia-Romo* clearly controls our decision in the present case. For his part, Cheat recognizes that this recent precedent defeats his claim. In his reply brief he states, "Petitioner recognizes that the panel is bound by *Garcia-Romo* but is raising the issue to preserve it for further review." Br. of Pet'r at 3.[2] Petitioner does correctly observe that a circuit split now exists between this Court and the Ninth Circuit on this narrow issue of statutory interpretation. In *Lopez v. Barr*, 925 F.3d 396 (9th Cir. 2019), the Ninth Circuit held that "a Notice to Appear that is defective under *Pereira* cannot be cured by a subsequent Notice of Hearing. The law does not permit multiple documents to collectively satisfy the requirements of a Notice to Appear." *Id.* at 405.

---

[2] Petitioner also noted that his opening brief did not cite *Garcia-Romo* because we issued our opinion "after Petitioner filed his opening brief." Br. of Pet'r at 1–2 n.1. This Court appreciates Petitioner's candor in recognizing that our case law forecloses his claim.

Whatever results are generated by "further review," the law in the Sixth Circuit is currently clear and we are bound by *Garcia-Romo*. *See Little v. BP Expl. & Oil Co.*, 265 F.3d 357, 362 (6th Cir 2001) ("[W]e are bound by Sixth Circuit precedent unless it is overruled by either our court sitting *en banc* or the Supreme Court.") Because this Court has held that the government may perfect a defective NTA with a subsequent Notice of Hearing that specifies the date and time of a removal hearing, the BIA did not abuse its discretion in denying Cheat's second motion to re-open.

### III. CONCLUSION

For these reasons, we **DENY** Petitioner's petition for review of the BIA order denying his second motion to reopen removal proceedings.